**Robert F. LUMPKIN, Plaintiff,**

v.

**CITY OF LAFAYETTE, ALABAMA, et al., Defendants.**

**Civil Action No. 97–A–1682–E.**

United States District Court, M.D. Alabama, Eastern Division.

Oct. 27, 1998.

**1260**

G. William Gill, McPhillips, Shinbaum & Gill, Montgomery, AL, for Plaintiff.

Alex L. Holtsford, Jr., Rick A. Howard, Nix, Holtsford & Vercelli, P.C., Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

### I. INTRODUCTION

This suit arises out of the termination of the Plaintiff's position as Public Safety Di-

rector of the City of Lafayette, Alabama. The named Defendants are the City of Lafayette, and the mayor and City Council members in their individual and official capacities. The Plaintiff asserts three claims: Count One-a federal law claim for violation of his procedural due process rights under the Fourteenth Amendment; Count Two-a state law claim for breach of contract; and Count Three-a state law claim for violation of Alabama Code section 11–43–160.

This case is before the court on a Motion for Summary Judgment filed by all Defendants on August 20, 1998. The Plaintiff filed a Response Brief on October 2, 1998, and the Defendants filed a Reply Brief on October 9, 1998.

For the reasons to be discussed, the Defendants' motion is due to be GRANTED as to the federal claims against all Defendants. The court declines to exercise supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3), and those claims are due to be dismissed without prejudice.

### II. FACTS

The submissions of the parties establish the following facts:

Prior to November 1990, the Plaintiff, Robert F. Lumpkin, was employed by the City of Lafayette as its Police Chief. In November of 1990, Mr. Lumpkin began serving as the city's Public Safety Director, a new position which consolidated administrative supervision and control of the police, fire, and emergency medical divisions of the city's Public Safety Department.

A letter from then-Mayor Ed Allen to the Plaintiff, dated November 6, 1990, confirmed that Mr. Lumpkin accepted his appointment to the position of Public Safety Director. The letter noted the following terms and conditions: 1) the position has been established by ordinance and Mr. Lumpkin reports directly to the mayor; 2) the position of Police Chief will remain vacant while Mr. Lumpkin holds the position of Public Safety Director, and Mr. Lumpkin could voluntarily return to the position of Police Chief at any time; and 3) if the position of Public Safety

Director is abolished, Mr. Lumpkin will automatically return to the position of Police Chief.

City Council Ordinance 328, dated August 12, 1991, established the full time position of Public Safety Director. Under the ordinance, the Public Safety Director was a merit system employee who was afforded every right and benefit given to employees serving classified positions as designated by the city's Personnel Manual. Mr. Lumpkin asserts that this provision clearly entitled him to notice of charges against him and a due process hearing prior to his termination. Mr. Lumpkin served as Public Safety Director until October of 1996.

On October 7, 1996, at a special session of the Lafayette City Council, council member Cornelius Reese, Jr. made a motion to abolish the position of Public Safety Director. See Plaintiff's Exhibit 15. The council members and mayor voted unanimously to abolish the position. See *id.* In a regular session of the Lafayette City Council on October 14, 1996, the council members and mayor voted unanimously to have the first reading to abolish Ordinance number 328. See Plaintiff's Exhibit 17. Subsequently, at the regular City Council session on October 28, 1996, the council members and mayor voted unanimously to abolish Ordinance number 328. See Plaintiff's Exhibit 16. Mr. Lumpkin was not rehired as Police Chief.

Mr. Lumpkin subsequently made a written request for a hearing before the City Council, which the Defendants rejected. The Plaintiff then filed suit in this court against the City of Lafayette and the mayor and council members, in their individual and official capacities, under 42 U.S.C. § 1983. Mr. Lumpkin alleged that his termination violated his procedural due process rights under the Fourteenth Amendment because he was not given notice of any charges against him, nor was he provided a due process hearing prior to his termination.

### III. *PROCEDURAL BACKGROUND*

The Defendants filed a Motion to Dismiss on March 10, 1998. As grounds for dismissal, the Defendants asserted that Mr. Lumpkin had not plead or proved that Alabama offered inadequate postdeprivation remedies. Mr. Lumpkin responded that where an employee is entitled to pre-termination notice and a hearing and does not receive that process, the procedural due process violation is complete when that employee is terminated.

In an Order dated April 10, 1998, this court granted the Defendants' Motion to Dismiss without prejudice. The court issued a Memorandum Opinion in which it examined the cases cited by both parties and stated the law as follows:

[T]he dispositive issue is not whether or not an employee was given a pre-termination hearing, but whether the defendants were applying or violating state procedures in denying the plaintiff a pre-termination hearing.

Under the analysis applied by these three cases, if the defendants were applying established procedures, then the procedural due process violation is completed with the termination. If the defendants were violating established procedures, then the procedural due process does not occur unless the state's remedies for this unauthorized act on the part of the state's agents are inadequate.

*Lumpkin v. City of Lafayette,* No. 97–A–1682–E, at 2–3 (M.D.Ala. Apr.10, 1998).

This court gave leave to the Plaintiff to file an Amended Complaint to state more clearly the basis for his procedural due process claim. The court instructed the Plaintiff to "make it clear whether he is challenging the City's termination procedures, or whether the Plaintiff is alleging that the City failed to follow established procedures." *Id.* at 5. The court further instructed the Plaintiff that if he "is challenging termination procedures, he should identify those procedures, and if he is challenging failure to comply with established procedures, he should make it clear whether he is claiming that post-deprivation remedies are inadequate." *Id.*

Mr. Lumpkin filed an Amended Complaint on April 24, 1998. In the Amended Complaint, the Plaintiff clearly alleges that the Defendants failed to comply with or follow the established procedures required by the City of Lafayette's Employee Handbook and the City of Lafayette's Code of Ordinances.

(Am.Compl.¶ 14). The Plaintiff further asserts "that there are no state post-deprivation remedies available to him and/or that any state post-deprivation remedies alleged to exist are inadequate." (Am.Compl.¶ 15).

Subsequently, the Plaintiff filed a Second Amended Complaint to add claims for breach of contract and a violation of Alabama Code § 11–43–160. In the breach of contract claim, the Plaintiff asserts that he entered into a contract with the City of Lafayette on November 6, 1990, which the City breached in October 1996. (Second Am. Compl. ¶¶ 23–24). The third claim seeks relief under an Alabama statute which requires notice and a hearing for removal of appointed city officials. Ala.Code § 11–43–160.

### IV. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### V. *DISCUSSION*

The Defendants assert three grounds for summary judgment: 1) the individual defendants are entitled to absolute immunity from civil liability because their actions were taken in the sphere of legitimate legislative activity; 2) Plaintiff's procedural due process claim fails because he cannot show that the state's remedial procedures were unavailable or inadequate; and 3) Plaintiff's breach of contract claim fails because the parties did not mutually assent to a contract extending beyond the terms of the then existing administration.

The court will first consider the federal claims for denial of procedural due process asserted under Count One.

#### A. Federal Claims

1. Absolute Immunity

◼ The individual Defendants cite *Bogan v. Scott–Harris,* 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), in support of their contention that they are absolutely immune from civil liability. In *Bogan,* the Supreme Court held that local legislators have absolute immunity from § 1983 liability for their legislative activities. *Id.* at ——, 118 S.Ct. at 972. The plaintiff in that case had been the administrator of the Department of Health and Human Services for the city of Fall River, Massachusetts. *See id.* at ——, 118 S.Ct. at 969. In 1990, she received complaints that an employee temporarily under her supervision had made racial and ethnic slurs. The plaintiff prepared termination

charges against that employee. While those charges were pending, the mayor proposed a budget for the fiscal year, which called for the elimination of 135 city positions, including the plaintiff's. The City Council adopted an ordinance eliminating the plaintiff's position, and the mayor signed the ordinance into law. *See id.*

The plaintiff subsequently filed suit against the city, the mayor, and several council members alleging that the elimination of her position was motivated by racial animus and retaliation against her for exercising her First Amendment rights in filing the complaint against the employee. *See id.* An appellate court upheld a jury verdict against the mayor and one council member on the plaintiff's First Amendment claim. The court relied on the jury's finding that constitutionally sheltered speech was a substantial factor in the defendants' decision to abolish the plaintiff's position. *Id.* The court reasoned that absolute immunity did not extend to the defendants' conduct because they "relied on facts relating to a particular individual" when making their decision. *Id.* at ——, 118 S.Ct. at 970.

The Supreme Court reversed the judgment of the Court of Appeals. *See id.* at ——, 118 S.Ct. at 973. After noting numerous reasons for extending absolute immunity to the legislative acts of local officials, the Court turned to an analysis of whether the defendants' acts were legislative. First, the Court noted the governing standard-that absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity." *Id.* at ——, 118 S.Ct. at 972. The Court then stated, "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at ——, 118 S.Ct. at 973. Once the Court removed "all considerations of intent and motive," it determined that the defendants were entitled to absolute immunity. *Id.* The council member's action in voting for an ordinance was "quintessentially legislative," while the mayor was performing legislative functions when he introduced a budget and signed an ordinance into law. *Id.*

In the present case, Mr. Lumpkin alleges that the mayor and council members violated his due process rights when they voted to abolish the position of Public Safety Director. Voting to abolish an ordinance and voting to abolish an official city position are legislative acts. Mr. Lumpkin seeks to distinguish his case from *Bogan,* however, on the basis that his position was the only one eliminated and the sole reason for the elimination was to terminate Mr. Lumpkin.

While the Court in *Bogan* left room to argue that the hiring or firing of a particular employee is not a legislative act, *see id.* at ——, 118 S.Ct. at 973, here the council members and mayor voted to terminate Mr. Lumpkin's position, not simply his employment. Even if the Defendants eliminated the position of Public Safety Director solely to get rid of Mr. Lumpkin, the termination of this position, as in *Bogan,* "may have prospective implications that reach well beyond the particular occupant of the office." *Id.* Moreover, as noted above, the motivation for the decision is irrelevant if the defendants' actions were legislative in character.

There may be some sense of unfairness in absolving the city council members and mayor from liability if they acted in contravention of established city policy. Nevertheless, the law gives absolute immunity to the individual defendants in this case because the plaintiff seeks to recover against them on the basis of their legislative acts. The doctrine of absolute legislative immunity "embodies the long-held belief that this country is better served by limiting recovery to injured parties rather than threatening the legislative process by placing legislators in fear of lawsuits from exercising their legislative duties." *Rateree v. Rockett,* 852 F.2d 946, 951 (7th Cir.1988).

## 2. Due Process

■ Having ruled that the mayor and council members are due to be dismissed in their individual capacities, this court now turns to the Plaintiff's claims against the city.[1] Mr. Lumpkin asserts that the city

---

1. Mr. Lumpkin also asserts claims against the mayor and council members in their official capacities. In *Kentucky v. Graham,* 473 U.S. 159,

167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Supreme Court noted that suing an official in his official capacity represents another

violated his procedural due process rights under the Fourteenth Amendment by terminating his employment without giving notice of any charges against him or conducting a due process hearing prior to the termination. Mr. Lumpkin bases his claim on the failure of the mayor and council members to follow the City of Lafayette's established procedure for terminating merit system employees.

As an initial matter, Mr. Lumpkin asks this court to revisit its application of the law in its April 10, 1998 Memorandum Opinion dismissing the original complaint in this case. The Plaintiff continues to assert that the due process violation was complete with his termination, and the availability of any postdeprivation remedies is irrelevant. After further reviewing the Plaintiff's argument, this court maintains that Mr. Lumpkin must show the unavailability or inadequacy of postdeprivation state remedies to establish a due process violation under the facts of the case.

In support of his contention, Mr. Lumpkin relies on cases in which the courts determined that a plaintiff could state a procedural due process violation under 42 U.S.C. § 1983 without pleading the unavailability or inadequacy of the state's postdeprivation remedies. *See Fetner v. City of Roanoke*, 813 F.2d 1183 (11th Cir.1987); *Enterprise Fire Fighters' Assn. v. Watson*, 869 F.Supp. 1532 (M.D.Ala.1994); *Peacock v. City of Elba*, No. 96–D–755–S (M.D.Ala. March 27, 1997)(DeMent, J.).

In *Fetner*, the court held that a plaintiff who had been dismissed from his position as police chief stated a valid procedural due process claim by alleging that the mayor and city council members failed to give him written notice or a hearing before firing him. *Fetner*, 813 F.2d at 1186. The court rejected the district court's reasoning that a procedural due process claim could be brought in federal court only if no effective procedure for relief exists within the state system. *Id.* at 1184. In addition, the court stated, "Postdeprivation remedies do not provide due pro-

cess if pre-deprivation remedies are practicable." *Id.* at 1186.

In *Enterprise Fire Fighters' Assn. v. Watson*, the court ruled that a firefighter who was terminated without receiving notice or a hearing stated a procedural due process claim. After determining that due process entitled the plaintiff to a hearing prior to his termination, the court held that the violation of procedural due process was complete when the plaintiff was terminated and could not be cured subsequent to termination. See *Watson*, 869 F.Supp. at 1541. Similarly, the court in *Peacock v. City of Elba* denied summary judgment for a city which terminated the employment of its police chief without providing a pre-termination hearing.

In each of these cases, the plaintiffs were not alleging that the mayor and city council members acted in contravention to an established city procedure setting forth what process was due to public employees. Instead, the plaintiffs were directly challenging procedures which permitted officials to violate an individual's due process rights or the lack of established procedures which gave officials the freedom to violate an individual's due process rights.

For example, in *Enterprise Fire Fighters' Assn. v. Watson*, Judge Thompson noted that the city officials "did not act in contravention to established procedures, but pursuant to such established procedures.... [T]he very fact that the procedures were adhered to by city officials is what caused the due process violation." *Watson*, 869 F.Supp. at 1540. Judge DeMent wrote in *Peacock* that "the plaintiff alleges that he received no pre-deprivation review. That is, the plaintiff challenges the review system (or·lack thereof), a procedural protection over which the State has control, rather than simply challenging the system as it was applied to him." *Peacock*, No. 96–D–755–S, at 8.

If Mr. Lumpkin had alleged that the mayor and council members acted pursuant to the city's procedures, or in the absence of

way of pleading an action against the government entity that employs the official. Because local governmental units can be sued directly for damages and injunctive relief, the court does not need to address separately any claims against the

officials in their official capacities. For simplicity, the court will refer only to the city, and not to the officials in their official capacities, when addressing the plaintiff's substantive claims.

any procedures, the violation of his procedural due process rights would have been complete at the moment of his termination, assuming that due process entitled him to notice and a hearing. That is not what Mr. Lumpkin alleges. Mr. Lumpkin does not attack the City of Lafayette's established procedure. He asserts that the mayor and council members ignored the city's established procedure when they eliminated his position without notice or a due process hearing.

■ Under the rule first set forth in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Due Process Clause of the Fourteenth Amendment is not violated by unauthorized actions of state officials if the state makes available a meaningful postdeprivation remedy. In *Parratt*, a state prisoner sued prison officials under 42 U.S.C. § 1983 for negligently losing a hobby kit he had ordered. The Court held that the prisoner had not made out a constitutional violation because the state offered a meaningful postdeprivation remedy, namely allowing the prisoner to proceed with a tort claim against the state. *See id.* at 543, 101 S.Ct. 1908.

Subsequently, the Supreme Court extended its holding in *Parratt* to intentional acts of state officials, concluding that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1983).

■ Mr. Lumpkin's reliance on *Rittenhouse v. DeKalb County*, 764 F.2d 1451 (11th Cir.1985), does not alter the standard governing this case. In *Rittenhouse*, the court discussed the "established state procedure" exception to the rule established by *Parratt v. Taylor*. *See id.* at 1454–57. Under this exception, the adequacy of post-deprivation remedies is inapplicable when the deprivation occurs as a result of an established state procedure because predeprivation process is ordinarily feasible in such cases. See *id.* at 1454–55. Mr. Lumpkin is not alleging that the deprivation of his property interest re-

sulted from an established state procedure. His Amended Complaint makes clear that he is challenging actions of city officials which directly contravene the city's established procedure.

Mr. Lumpkin's claim, that unauthorized actions of city officials deprived him of his property in violation of his due process rights, falls within the rule set forth in *Parratt v. Taylor* and *Hudson v. Palmer*. Thus he must demonstrate the absence of a meaningful state post-deprivation remedy to make out a procedural due process violation.

Mr. Lumpkin asserts that any state post-deprivation remedies were unavailable or inadequate. He hired counsel who made a direct request for a hearing before the City Council and his return to the position of Police Chief. The city denied his request. Mr. Lumpkin then filed a statutory claim with the city which was also denied. He claims that the only other post-deprivation remedy available to him was to file the instant lawsuit.

In a case addressing the adequacy of state postdeprivation remedies, the Eleventh Circuit noted that Alabama courts review employment termination proceedings "both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process." *Bell v. City of Demopolis*, 86 F.3d 191, 192 (11th Cir.1996) (citing *Ex Parte Tuskegee*, 447 So.2d 713 (Ala.1984); *Guinn v. Eufaula*, 437 So.2d 516 (Ala.1983)). The Alabama courts were available to hear Mr. Lumpkin's claim that the city officials failed to follow established procedures requiring notice and a hearing before his termination.

■ Mr. Lumpkin contends that a rule forcing him to seek relief in the state courts in this situation amounts to an exhaustion requirement. Clearly, the right to bring an action under 42 U.S.C. § 1983 does not depend on the exhaustion of state judicial or administrative procedures. *See Patsy v. Board of Regents*, 457 U.S. 496, 503, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Fetner v. City of Roanoke*, 813 F.2d 1183 (11th Cir. 1987). A plaintiff who has suffered an unconstitutional deprivation of his property may bring suit under 42 U.S.C. § 1983 in

federal court without first resorting to the state court system.

Mr. Lumpkin, however, has not established the constitutional violation necessary to state a claim under § 1983. As the *Fetner* court noted, "*Parratt* ... stands for the proposition that a plaintiff may sue only in state court if he fails to state a procedural due process claim under section 1983. Unlike an exhaustion requirement, which is based upon principles of comity, the Parratt analysis is based upon the concept that there is no constitutional violation if a plaintiff has not been deprived of a protected interest without due process of law." *Fetner,* 813 F.2d at 1185 n. 6.

Mr. Lumpkin also claims that any state postdeprivation remedies were inadequate because they would not have allowed a wrongfully discharged employee such as Mr. Lumpkin to claim or recover mental anguish or punitive damages. Mr. Lumpkin cites no law in support of this contention. Nevertheless, as the Supreme Court stated in *Parratt,* "Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt,* 451 U.S. at 544, 101 S.Ct. 1908.

Mr. Lumpkin alleges that the mayor and council members terminated his employment without following the procedure required by the City of Lafayette's Code of Ordinances. Because he challenges the unauthorized actions of the city officials, Mr. Lumpkin cannot establish a constitutional violation if the state provided a meaningful postdeprivation remedy for his loss. Here, the state provides an adequate remedy through recourse to its judicial system. The plaintiff has not established a constitutional violation, and thus his claim against the city under § 1983 cannot proceed.[2]

### B. State Law Claims

The remaining claims against the city are state law claims for breach of contract and a violation of Alabama Code § 11–43–160. These claims are best handled by the state courts. Under 28 U.S.C. § 1367(c)(3),

---

2. This would, of course, also bar the Plaintiff's section 1983 claim against the mayor and coun-

this court may decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it has original jurisdiction. Having dismissed the procedural due process claim over which the court had original jurisdiction, this court chooses to decline to exercise supplemental jurisdiction over the remaining claims. Mr. Lumpkin may pursue those claims in state court.

### VI. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is due to be GRANTED as to the federal claims against all Defendants. The remaining state law claims are due to be dismissed without prejudice. A separate Order will be entered in accordance with this Memorandum Opinion.

cil members, individually, even if they were not entitled to absolute legislative immunity.