**Michael Patrick HILL Plaintiff,**

v.

**Patrick MANNING, etc.,
et al., Defendants.**

**Civil Action No. 02–A–696–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 12, 2002.

Jimmy L. DeBardelaben, Debardelaben & Westry PC, Montgomery, AL for plaintiff.

Thomas D. Simon, Alabama Department of Public Safety, Legal Unit, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment (Doc. # 8) filed by Defendants Patrick Manning, James Alexander, K.M. Claunch, Phillip

Pettus, and Joe Duncan, (collectively "the Defendants") on July 9, 2002.

The Plaintiff, Michael Hill, originally filed his Complaint in this case on June 18, 2002. The Plaintiff brings claims for violation of procedural due process under 28 U.S.C. § 1983 (Count I), retaliation under the Fair Labor Standards Act ("FLSA") (Count II), and assault (Count III). The Defendants responded by filing a Motion to Dismiss, Or, In The Alternative, Motion For Summary Judgement (Doc. # 8). The court subsequently converted this motion into a Motion for Summary Judgment on July 25, 2002 (Doc. # 11).

For the reasons to be discussed, the Defendants' Motion for Summary Judgment is due to be GRANTED as to the Plaintiff's federal law claims. The court will decline to exercise supplemental jurisdiction over the state law claim.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. *FACTS*

The submissions of the parties establish the following facts, construed in a light most favorable to the nonmovant:

The Plaintiff has been employed as an Alabama State Trooper for five years. On May 23, 2002, Corporal Joe Duncan ordered the Plaintiff to meet with Sergeant K.M. Claunch. During this meeting, Sergeant Claunch instructed the Plaintiff to submit written reports concerning two separate incidents involving the Plaintiff. First, pursuant to a directive from Lieu-

tenant Phillip Pettus, Sergeant Claunch ordered the Plaintiff to explain why the Plaintiff did not return his patrol vehicle to the Quad Cities Post prior to the Plaintiff's departure for military leave. Second, Sergeant Claunch ordered the Plaintiff to expound upon the Plaintiff's allegation that Sergeant Claunch and Corporal Duncan had improperly filed for overtime pay when it was not warranted.

After speaking with his attorney, the Plaintiff refused to abide by these requests until Sergeant Claunch could produce official documentation from the Department of Public Safety ("DPS") authorizing the inquiries. The Plaintiff specifically objected to the order to produce a report about the overtime abuse on the ground that such an unauthorized report could form the basis of an obstruction of justice charge against the Plaintiff. Additionally, the Plaintiff feared that Sergeant Claunch and Corporal Duncan were attempting to discover possible evidence that could be used against them in a subsequent criminal proceeding. Following the Plaintiff's refusal to comply with the order, Sergeant Claunch ordered the Plaintiff to leave the room and Corporal Duncan shut the door on the Plaintiff's hand causing him injury. The Plaintiff subsequently filed an injury report with DPS and sought medical treatment for his injury.

On May 29, 2002, the Plaintiff made a motion to be added as a named plaintiff in a Fair Labor Standards Act suit against DPS pending before this court. *See Jarrett, et al. v. Alexander, et al.*, Civil Action Number 01–A–1519–N.[1] The court granted the Plaintiff's motion on May 30, 2002.

Also on May 30, 2002, the Plaintiff had a series of meetings at the Quad Cities Post that are critical to the present action. First, the Plaintiff received two formal citations stemming from his refusal to write the reports requested by Sergeant Claunch. At the close of the second citation, Sergeant Claunch recommended that the Plaintiff should be dismissed from employment with DPS.

Additionally, two DPS investigators, Sergeant Head and Lieutenant Crittenden, attempted to interview the Plaintiff concerning the overtime abuse allegations and his injury complaint against Sergeant Claunch. The investigators requested that the Plaintiff sign a *Garrity* warning form[2] as well as an administrative release form authorizing DPS to obtain "any and all information, privileged or otherwise, relating to [the Plaintiff's] past record and character whether it be financial, academic, military, medical, employment, judicial, or personal reference." Plaintiff's Exhibit # 9. After speaking with his attorney, the Plaintiff refused to proceed with the interview because of his belief that DPS was attempting to harass and intimidate him as a result his participation in the wage and hour suit.

On June 14, 2002, Sergeant Claunch gave the Plaintiff a letter from Michael Manning, Chief of the Highway Patrol Division, recommending the termination of the Plaintiff's employment. Additionally, a note was posted on a bulletin board at the Quad Cities Post stating that the Plaintiff "has been given his termination papers this morning. Troopers are instructed not

---

1. The case addresses whether DPS is required to pay overtime for the time Troopers spend off-duty, but "on-call."

2. This form states that the questioning is only intended for internal administrative purposes and the information gained from the interview can not be used against the employee in

a criminal proceeding. The employee is further advised that he may not consult an attorney and cannot assert any rights against self incrimination. Finally, the document warns the employee that his failure to cooperate will be grounds for discipline. Plaintiff's Exhibit # 10.

to provide any professional or personal departmental services." Plaintiff's Exhibit # 14. On June 17, 2002, while the Plaintiff was in the process of returning his equipment, the Plaintiff asked Sergeant Claunch when he was officially terminated. Sergeant Claunch responded by stating that official termination occurred upon receipt of the letter from Chief Manning.

The Plaintiff subsequently appealed his termination recommendation to the State Personnel Director. Following notice of this appeal, James Alexander, the Director of Public Safety, informed all parties that the situation required additional investigation prior to rendering a final termination decision. The Plaintiff was ordered to return to work pending a final decision on his employment status. During this interim period, however, the Plaintiff received a third disciplinary citation as a result of his failure to cooperate with the DPS administrative investigators during the May 30, 2002 interview.

By a letter dated July 17, 2002, Chief Manning once again issued a termination recommendation to the Plaintiff. Two weeks later, Director Alexander formally notified the Plaintiff that his employment with DPS would be terminated as of July 31, 2002. Director Alexander cited three reasons for the dismissal: 1) the Plaintiff's

failure to return his patrol car as ordered; 2) the Plaintiff's refusal to write the two reports requested by Sergeant Claunch; 3) the Plaintiff's failure to cooperate with the DPS administrative investigators. The Plaintiff responded by filing a notice of appeal with the State Personnel Director. As far as this court is aware, this proceeding is currently pending before the State Personnel Department.

## IV. DISCUSSION

### A. Summary Judgment & Admissible Evidence

At the outset, the court must address the Defendants' objection to the Plaintiff's introduction of transcripts of certain tape recorded conversations into the summary judgment record.[3] In opposition to the Defendants' Motion for Summary Judgment, the Plaintiff has introduced transcripts of tape recorded conversations between himself and various DPS officials. Rather than attesting to the authenticity of the transcripts with affidavits, the Plaintiff has simply attached these unauthenticated transcripts to his brief. The Defendants argue that these transcripts should be excluded from the record because they are incomplete, unauthenticated, and inadmissible hearsay.[4]

---

3. The Defendant objects to four specific documents: 1) the conversation between the Plaintiff, Duncan, and Claunch on 5/23 (Plaintiff's Exhibit # 2); 2) the conversation between the Plaintiff and the DPS investigators on 5/30 (Plaintiff's Exhibit # 8); 3) the conversation between the Plaintiff and Claunch on 6/14 (Plaintiff's Exhibit # 15); and 4) the conversation between Hill and Claunch on 6/17 (Plaintiff's Exhibit # 16).

4. In a somewhat unusual role reversal, the Defendants also argue that the transcripts are inadmissible because they are subject to the Plaintiff's work product privilege. The Defendants moved for production of these transcripts in the wage and hour suit, but the

Plaintiffs refused to disclose them, citing the work product privilege. Because the Plaintiff has produced these transcripts in this case, the Defendants argue that the privilege claimed in the wage and hour suit should extend to this case, thus rendering the evidence inadmissible. Alternatively, the Defendants contend that if the Plaintiff has waived his privilege by disclosing the transcripts pursuant to this Motion, then the documents should be admissible in the other suit as well. Despite the novelty of this argument, the court holds that the Plaintiff has waived his claim of work product privilege in this suit. The court takes no position on the admissibility of the transcripts in the wage and hour suit.

■ Upon a motion for summary judgment, the district court may consider a hearsay statement if the statement could be reduced to admissible form at trial. *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir.1999). Stated differently, otherwise admissible evidence may be submitted in inadmissible form at the summary judgment stage. *McMillian v. Johnson,* 88 F.3d 1573, 1584 (11th Cir.1996).

■ Construed in a light most favorable to the non-moving party, *Church of Scientology Flag Service Organization, Inc. v. City of Clearwater,* 2 F.3d 1514, 1531 (11th Cir.1993), the court assumes for purposes of this motion that the relevant portions of these transcripts could be reduced to admissible form at trial. With respect to authentication, the Plaintiff recorded the conversations himself, thus he is available to provide the necessary foundation for admissibility. Additionally, the relevant portions of three of the conversations involve only the Plaintiff and the various parties to this lawsuit; therefore, in the absence of evidence to the contrary, the court will assume that these statements would be admissible as party admissions.[5] *Fed.R.Evid.* 801(d)(2); *see Cuddy v. Wal-Mart Super Center, Inc.,* 993 F.Supp. 962, 967 (W.D.Va.1998) (holding that recorded audio conversations between the plaintiff's wife and potential employer should be admitted into the summary judgment record as the tapes were authenticated by the recording party and detailed party admissions).

With respect to the final conversation between the Plaintiff and the DPS administrative investigators on May 30, 2002, it cannot qualify as a party admission under Rule 801(d)(2) because neither of the two investigators is a named defendant in this action. Nevertheless, the court assumes that this conversation is non-hearsay as the Plaintiff appears to be offering it for the purpose of establishing that DPS officials attempted to harass him after the filing of the wage and hour suit, not for the truth of the content contained in those conversations. *See Fed.R.Evid.* 801(c).

### B. *Procedural Due Process Claim*

Having assumed that all of the evidence in the summary judgment record could be reduced to an admissible form at trial, the court will now consider the Plaintiff's argument that the Defendants violated the Plaintiff's procedural due process rights when they terminated his employment. The Plaintiff contends that his employment was officially terminated on June 14 when Sergeant Claunch gave him the first letter recommending his termination.[6] State Troopers are Merit System employees under Alabama law, *Ala.Code* 36–26–10(c), thus only the "appointing authority" can terminate their employment. *Ala. Code* § 36–26–27. The appointing authority for the Department of Public Safety is the Director of Public Safety, James Alexander. *See Ala.Code* § 32–2–4. Accordingly, the Plaintiff concludes that his termination by Sergeant Claunch did not comply with the mandates of procedural due process.[7]

The Defendants contend that the Plaintiff's employment was not terminated until the Plaintiff received the formal letter of

---

5. These conversations are documented as Plaintiff's Exhibits 2, 15, and 16.

6. The Plaintiff supports this claim with the statements of Sergeant Claunch during their conversations on June 14 (Plaintiff's Exhibit # 15) and June 17 (Plaintiff's Exhibit # 16). Additionally, the Plaintiff points to the fact that a notice of his termination was posted on the bulletin board at the Quad Cities Post (Plaintiff's Exhibit # 14) on June 13, 2002.

7. Merit System employees have a property interest in their employment positions, thus they are entitled to procedural due process protection. *See Thompson v. Bass,* 616 F.2d 1259, 1264–65 (5th Cir.1980).

termination from Director Alexander on July 31, 2002. The Defendants maintain that the June 14 letter was only a recommendation notice of termination, not a formal termination. Therefore, the Defendants conclude that they have complied with the Merit System termination procedures and have not violated the Plaintiff's procedural due process rights.

■ Notwithstanding the arguments by the two parties as to when and how the Plaintiff's employment was terminated, the court can resolve the procedural due process issue on the basis of the doctrine announced by the Supreme Court in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and later extended in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Under the rules gleaned from these two cases, an unauthorized intentional or negligent deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if the state provides a meaningful post-deprivation remedy for the loss. *Tinney v. Shores*, 77 F.3d 378, 381–82 (11th Cir.1996).

In applying *Parratt* and *Hudson*, a distinction is drawn between cases in which a state process itself is challenged, and cases in which the procedures as applied are challenged. *See Bell v. City of Demopolis*, 86 F.3d 191, 192 (11th Cir.1996) (distinguishing between a challenge to the state procedure itself and a challenge to the state procedure as applied). The significance of the distinction is that when a state actor takes unauthorized action, the procedural due process violation does not become complete until the state refuses to provide due process. *McKinney v. Pate*, 20 F.3d 1550, 1563 (11th Cir.1994). The rationale for this distinction rests with the fact that once a state has established procedures for the termination of a Merit System employee—which Alabama undisputedly has—it cannot predict whether or not, in a given situation, those procedures will be followed or ignored. *See Tinney*, 77 F.3d at 382 n. 1. Therefore, when a State official takes intentional unauthorized action that was not preventable beforehand by the State, no procedural due process violation occurs unless the state fails to provide the opportunity to redress the situation after the fact. *Id.*

This court had the opportunity to discuss the "as applied" portion of the *Parratt/Hudson* doctrine in *Lumpkin v. City of Lafayette*, 24 F.Supp.2d 1259 (M.D.Ala. 1998). In *Lumpkin*, a city police chief was terminated from his position and based a procedural due process claim on the fact that the mayor and city council did not comply with the proper procedure for terminating Merit System employees. *Id.* at 1263–64. Unlike the cases in which plaintiffs had challenged the constitutional adequacy of the established procedures, *Lumpkin* presented a different situation in which the plaintiff alleged that the mayor and city council members acted in contravention to an established city procedure for the termination of public employees. *Id.* at 1264–65; *see Carter v. Harris*, 64 F.Supp.2d 1182, 1189–90 (M.D.Ala.1999) (holding that a plaintiff's claim that a public university violated its handbook procedures for employment termination raised a claim falling within *Parratt/Hudson*). Because Mr. Lumpkin only argued that the unauthorized actions of city officials deprived him of his property in violation of his due process rights, this court held that the case fell squarely within rules set forth in *Parratt* and *Hudson*. *Id.* at 1265. Accordingly, Mr. Lumpkin had to demonstrate the absence of a meaningful state post-deprivation remedy in order to make out a procedural due process violation. *Id.*

■ Similar to *Lumpkin*, this case also falls within the parameters of *Parratt* and

*Hudson.* Assuming that the Plaintiff is correct in his assertion that he was wrongfully terminated on June 14, 2002 when Sergeant Claunch gave him his termination letter, the Plaintiff only alleges that the Defendants deviated from the established Merit System procedure—that is, the Plaintiff was not terminated by Director Alexander as called for under the Alabama Code.[8] Stated differently, the Plaintiff argues that Sergeant Claunch and Chief Manning did not have the authority to terminate his employment on June 14 and this unauthorized act violated his procedural due process rights. Complaint ¶ 27. Because such a claim is subject to the rules announced in *Parratt* and *Hudson,* the Plaintiff must establish the absence of a meaningful post-deprivation remedy to survive the Defendants' Motion for Summary Judgment.

The facts clearly indicate that the Plaintiff has availed himself of the various post-termination administrative remedies provided to public employees. Indeed, the Plaintiff has filed an appeal with the State Personnel Department and this proceeding is currently pending. The Plaintiff has not alleged nor do any facts in the record indicate that this mechanism is inadequate to remedy a procedural due process violation. *See Bell,* 86 F.3d at 192. As the Supreme Court stated in *Parratt,* "Although the state remedies may not provide the respondent with all the relief which may have been available under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt,* 451 U.S. at 544, 101 S.Ct. 1908.

In conclusion, the Plaintiff argues that the Defendants terminated his employment without following the procedure required by the Alabama Merit System. *See Ala.Code* 36–26–27 (stating that the employee must be terminated by the "appointing authority"). Because he only challenges the unauthorized actions of the State officials, the Plaintiff cannot establish a procedural due process violation if the state provides him with a meaningful post-deprivation remedy for his loss. Because the State has provided such a remedy in the form of its administrative appeals process, the Plaintiff's § 1983 claim cannot proceed.

### C. *Retaliation Under the FLSA*

The Plaintiff also brings a claim under the Fair Labor Standards Act ("FLSA") alleging that he was the victim of discrimination and retaliation because he filed a wage and hour lawsuit against the Department of Public Safety. *See Jarrett, et al. v. Alexander, et al.,* Civ. No. 01–A–1519–N, —— F.Supp.2d —— (M.D.Ala.2002) . The Defendants respond to this charge by stating that the Plaintiff was terminated for his repeated acts of insubordination, not for his participation in the wage suit.

The FLSA provides that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). In analyzing FLSA retaliation claims, the Eleventh Circuit applies the shifting burden of proof scheme initially articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)[9]. *See Wolf v. Coca–Cola, Co.,* 200 F.3d 1337, 1342–44 (11th Cir.2000). Under this standard, a plaintiff must first

---

8. The Plaintiff gives no indication in any of his briefs or pleadings that he is challenging the constitutional sufficiency of the Alabama Merit System procedures.

9. Although *McDonnell Douglas* involved a Title VII action, the Eleventh Circuit has extended its analytical framework to retaliation claims under the FLSA.

establish a prima facie case of retaliation. *See id.* at 1343. The burden of proof then shifts to the employer to offer a legitimate, non-retaliatory reason for the adverse employment action. *See id.* at 1343. Once such a reason is offered, the burden shifts back to the plaintiff to establish that the employer's stated reason is pretextual. *Id.* In order to avoid a motion for summary judgment at this third stage, the plaintiff must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual-i.e., unworthy of belief." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997).

■ To establish a prima facie case of retaliation under the FLSA, the Plaintiff must demonstrate that: 1) he engaged in activity protected under the FLSA; 2) he subsequently suffered adverse action by the employer; 3) a causal connection existed between the employee's activity and the adverse action. *Wolf,* 200 F.3d at 1342–43. In demonstrating causation, the Plaintiff must prove that the adverse action would not have happened "but for" the assertion of FLSA rights. *Reich v. Davis,* 50 F.3d 962, 965–66 (11th Cir.1995).

■ The Plaintiff has established a prima facie case in this action. First, the Plaintiff engaged in protected activity under the FLSA by filing an FLSA wage and hour suit against the Department of Public Safety and its various officials. Second, the Plaintiff suffered adverse employment action subsequent to the filing of the wage and hour suit in the form of alleged harassment by DPS officials during the interview on May 30 and, ultimately, employment termination.[10] Third, the Plaintiff has established a causal connection between his participation in the wage and hour suit and the Defendants' two adverse actions. According to Eleventh Circuit precedent, a plaintiff satisfies the causal-connection element if he provides sufficient evidence of a close temporal proximity between the employer's awareness of the protected conduct and the adverse employment action. *See Farley v. Nationwide Mutual Ins. Co.,* 197 F.3d 1322, 1336 (11th Cir.1999). In the present case, the Plaintiff was interviewed by DPS officials on the day after the Defendants received notice of Plaintiff's involvement in the wage and hour suit.[11] Furthermore, the Plaintiff received his first employment termination notice on June 14, 2002, just two weeks after he filed the wage and hour suit. This minimal gap of time between the assertion of FLSA rights and the employer's adverse actions is sufficient to establish the requisite causal nexus for a prima facie case. *See, e.g., Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 601 (11th Cir.1986) (holding that a one month gap is sufficient to establish a causal nexus).

■ Having established a prima facie case of retaliation, the burden of production shifts to the Defendants to articulate legitimate, non-retaliatory reasons for the

---

10. The FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate" against an employee who has filed an FLSA action. The court understands the Plaintiff's argument as alleging two types of adverse action: employment termination and harassment from DPS investigators. While termination is clearly contemplated by the terms of the statute, the court interprets the phrase "in any other manner discriminate" as broad enough to encompass harassing behavior against an employee who has

asserted FLSA rights. *See, e.g., Marti v. Grey Eagle Distribs., Inc.,* 937 F.Supp. 845, 855 (E.D.Mo.1996) (stating that acts such as keeping a warehouse at extremely cold temperatures, increased supervision, and restrictive break rules could constitute retaliation under the FLSA if carried out by the employer as a result of the plaintiffs' suit).

11. Plaintiff's counsel notified Defense counsel of the Plaintiff's involvement in the suit on May 29, 2002. Plaintiff's Exhibit # 7.

two adverse employment actions. *See Wolf,* 200 F.3d at 1343. The Defendants state the three reasons for the Plaintiff's termination: 1) the Plaintiff failed to return his patrol car as ordered; 2) the Plaintiff refused to write the two reports requested by Sergeant Manning; and 3) the Plaintiff did not cooperate with the DPS administrative investigators during the May 30, 2002 interview. With respect to the May 30 interview, the Defendants state that it was only designed to complete an ongoing investigation into the solicitation of complaints by a fellow officer and explore the Plaintiff's own complaint against another supervisor. The Defendants maintain that the purpose of the interview was not to harass the Plaintiff for filing a wage and hour lawsuit. Because the Defendants have met their burden of production for each of the two claims, the Plaintiff must now produce evidence from which a reasonable jury could believe that the Defendants' proffered reasons are unworthy of belief. *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1396 (10th Cir.1997).

The Plaintiff has failed to carry his burden at this stage of the analysis. Concerning the termination of his employment, the Plaintiff has not introduced any evidence into the record that challenges the Defendants' stated grounds. Indeed, the Plaintiff has not contested the fact that he did not return his patrol car on time, that he did not write the reports requested by Sergeant Manning, and that he did not comply with the orders given to him by the DPS investigators. Although the Plaintiff articulates reasons why he did not accomplish these tasks, he does not offer any proof supporting the contention that they were pretextual justifications for his dismissal.[12] Because the Plaintiff has not introduced evidence sufficient to create a genuine issue of material fact as to the basis for his termination, the Defendants are entitled to summary judgment on this claim.

With respect to the claim of harassment, the Plaintiff argues that the interview by DPS investigators on May 30, 2002 was designed to intimidate him as well as have a chilling effect on other troopers considering joining the wage and hour suit. Nevertheless, the Plaintiff's claim is undercut by his own evidence as his tape recording of the conversation indicates that the investigators never asked him about the wage suit and indicated that they did not even know of the Plaintiff's pending action.[13] Plaintiff's Exhibit # 8. Even more

---

12. For example, the Plaintiff maintains that he did not return his patrol car on time because he could not find a ride home from the Quad Cities Post. While certainly plausible, this reason do not create a genuine issue of fact that the Defendants' justifications are pretextual. In fact, the Plaintiff's brief in opposition to the Motion for Summary Judgment only addresses the harassment claim and does not offer any substantive evidence to rebut the Defendants' non-retaliatory reasons for the Plaintiff's dismissal.

13. According to the Plaintiff's transcripts of the interview, the Plaintiff spoke with his attorney and returned to inform the investigators that he considered the interview harassment and intimidation for filing the wage and hour suit. The Plaintiff told the investigators that his attorney suggested that they call him. After this statement, the following exchange took place:

HEAD: The only thing this [sic] I don't understand. [sic] Is how can this be retaliation when I don't know about it. You just told me. You just told me about a lawsuit, I didn't know about EEO [sic].

HILL: You know I

HEAD: And apparently [plaintiff's counsel] know [sic] that I don't know it because he told me to call [defense counsel].

CRITTENDEDN: Yeah.

Head and Crittenden laughing

CRITTENDEN: All right Mike, Yeah that's okay. That's all right.

telling is the fact that the Plaintiff has not alleged, nor has he introduced any evidence, that the DPS interviewers knew of the wage suit or were acting under instructions to harass or intimidate him because of his involvement in the suit.[14] Finally, the Plaintiff has not presented the court with any evidence to create a genuine issue of material fact concerning whether the two waivers were designed for something other than DPS internal investigations.

The Plaintiff also attempts to support his harassment claim with evidence that Corporal Rushton, another Trooper added to the wage suit on the same day as the Plaintiff, was subjected to similar harassment from DPS officials on the day before the Plaintiff's interview. The Plaintiff seeks to draw a connection between these two events as evidence that the two men were singled out for unfair harassment because of their participation in the wage suit. The evidence in the record does not support this position. Most notably, the Plaintiff has introduced the statement that Corporal Rushton gave to the DPS investigators on May 29; however, the Plaintiff's argument is undermined because Corporal Rushton gave this interview voluntarily, signed the required waivers, and did not discuss any matters related to the pending wage suit.[15] Even more telling is the absence of any supporting affidavits from Corporal Rushton indicating the harassing nature of this interview or that refutes the Defendant's position that this interview was intended only to address ongoing internal investigations. In the end, the Plaintiff has only presented evidence of a close temporal proximity between the filing of the wage suit and his allegedly harassing interview. While sufficient to establish a prima facie case of retaliation, this quantum of evidence cannot survive a motion for summary judgment. Accordingly, the Defendants' Motion for Summary Judgment is due to be granted as to this claim.

### D. *State Law Assault Claim*

■ The remaining claim against the Defendants is a state law claim for assault. This claim is best handled by the state courts. Under 28 U.S.C. § 1367(c)(3), this court may decline to exercise jurisdiction over state law claims when it has dismissed all claims over which it has original jurisdiction. Having dismissed both the procedural due process and FLSA retaliation claims, the court chooses to decline the exercise of supplemental jurisdiction over the remaining assault claim.

## V. *CONCLUSION*

For the reasons stated above, the Defendants' Motion for Summary Judgment is due to be GRANTED as to the federal claims (Counts I & II) against the Defendants. The remaining state law claim (Count III) is due to be dismissed without prejudice. A separate Order will be en-

---

**14.** Although the Plaintiff notified Defense counsel of his involvement in the wage and hour suit on May 29, nothing in the record suggests that this information was conveyed to the DPS investigators.

**15.** The pending wage suit relates to whether Troopers should be compensated for the time they spend "on-call" during non-working hours. Despite the Plaintiff's allegations to the contrary, nothing in the statement of Corporal Rushton or the recorded interview with the Plaintiff even remotely touches on this

issue. Instead, Corporal Rushton's statement addresses the allegations that superior officers had been improperly filing for overtime pay. According to the affidavit of Bobby Head, one of the investigators who conducted the May 30 interview with the Plaintiff, one of the two purposes of the interview with the Plaintiff was to explore this exact issue-that is, whether the Plaintiff had been solicited by Corporal Rushton to make a statement against a supervising officer about overtime abuse. Defendants' Exhibit G.

tered in accordance with this Memorandum Opinion.

### ORDER AND JUDGMENT

In accordance with the Memorandum Opinion entered on this day, it is hereby ORDERED as follows:

1. The Defendants' Motion for Summary Judgment is GRANTED as to the Plaintiff's federal claims (Counts I and II).

2. Judgment is entered in favor of the Defendants, Patrick Manning, James Alexander, K.M. Claunch, Phillip Pettus, and Joe Duncan, and against the Plaintiff Michael Patrick Hill, on the federal claims contained in this suit (Counts I and II).

3. The court declines to exercise supplemental jurisdiction over the state law claim for assault (Count III), and that claim is DISMISSED without prejudice.

4. Costs are taxed against the Plaintiff.