United States Court of Appeals,

Eleventh Circuit.

No. 94-7216.

James Larry FIKES, Plaintiff-Appellant,

v.

CITY OF DAPHNE;  Joseph Hall, Police Chief for City of Daphne;
Susan Hostetter, City Personnel Manager a/k/a Susan Cowart;
Charlie McNichol, Employee for the City of Daphne;  Walter Gipson,
Employee for the City of Daphne, et al., Defendants-Appellees.

April 9, 1996.

Appeal from the United States District Court for the Southern
District of Alabama. (No. CV-94-446-BH-M), William Brevard Hand,
Judge.

Before TJOFLAT, Chief Judge, and DYER and GARTH[*], Senior Circuit
Judges.

TJOFLAT, Chief Judge:

This appeal presents the question of whether the district
court erred in dismissing, for failure to state a claim, a police
officer's complaint alleging that he was discharged from his
employment for exercising his freedom of speech.  We find that the
complaint does state a claim.  We therefore VACATE the court's
judgment and REMAND the case for further proceedings.

I.

On October 19, 1989, appellant went to work for the City of
Daphne, Alabama, as an officer in its police department.  On July
15, 1992, following a pretermination hearing, the City discharged
appellant for "good cause," consisting of

(a) Deliberately stealing, destroying, abusing or damaging
City property, tools, or equipment, or the property of another

---

[*]Honorable Leonard I. Garth, Senior U.S. Circuit Judge for
the Third Circuit, sitting by designation.

employee, citizen or visitor;

(b) Disclosure of confidential city information to unauthorized persons;

(c) Wilfully disregarding City policies or procedures.[1]

On June 10, 1994, twenty-three months after his discharge, appellant brought this suit against the City, the city manager, the city personnel manager, the police chief, and three police officers.[2] In a quintessential "shotgun" pleading, [3] appellant sought compensatory damages[4] against the defendants severally to redress deprivation of rights secured by:

> (a) The First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution providing for the rights of all persons ... to enjoy freedom of speech, movement, association and assembly, to petition their government for redress of their grievances, to be secure in their persons, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from slavery and deprivations of life, liberty and property without due process of law, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, and § 1985(2), providing for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law; and

> (b) the common law of the State of Alabama providing for damages to persons subjected to the intentional [infliction] of emotional distress or the intentional interference with employment contracts.

---

[1]This statement of good cause is taken *verbatim* from appellant's complaint.

[2]Appellant also sued "DOES ONE through FIVE." The district court, in its order dismissing the case, struck these unknown persons as defendants.

[3]*See Pelletier v. Zweifel,* 921 F.2d 1465, 1518 (11th Cir.), *cert. denied,* 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991).

[4]In the first paragraph of his complaint, appellant alleged that he "seeks to enjoin the defendants from continuing to deprive him of [his constitutional] rights." In the prayer for relief at the conclusion of his complaint, however, appellant made no mention of equitable relief. Rather, he sought only money damages.

The "Statement of Facts" contained in the complaint is rather disorganized. It is difficult, without some speculation, to discern precisely what took place and how, if at all, the events interact with one another. In addition, one must read between the lines to determine which events deprived appellant of the various constitutional and statutory rights mentioned above. Given these impediments to an accurate construction of appellant's complaint, we relate the events described in, or arguably inferable from, appellant's Statement of Facts. We set out these events in the order in which they appear in the pleading.

(1) As noted above, appellant's employment in the police department began in October 1989 and, following a pretermination hearing, terminated in July 1992, purportedly for good cause.

(2) After his discharge, appellant sought employment at the municipal airport in Mobile, Alabama, but was turned down because the City's personnel manager said that he was ineligible for reemployment with the City.

(3) In August 1990, while employed by the police department, appellant was injured while responding to a domestic dispute. He filed a worker's compensation claim. Following surgery, his physician said he could return to work if restricted to light duty. The chief of police, Joseph Hall, put appellant on full duty, telling him that if he could not do his job, someone would be found who could.

(4) After his worker's compensation claim was settled and he returned to work, appellant attempted to reopen his claim.

(5) Soon after returning to work, appellant suffered

"additional symptoms, which required the services of a chiropractor." The chiropractor placed additional restrictions on his work activity; for example, appellant could not wear a "duty belt" while sitting. Appellant's supervisor told appellant that he could not work without wearing the belt.

(6) In August 1992, during a Department of Industrial Relations hearing on appellant's worker's compensation claim, the City's personnel manager testified falsely that appellant had not reported to work since the previous March.

(7) On May 26, 1990, Officer McNichol, a defendant here, ignored an order from his superior, Sergeant Gipson, to terminate a high-speed automobile chase. McNichol disregarded the order and continued the pursuit. The pursuit resulted in four fatalities. Appellant immediately reported the incident to Chief Hall and, in November 1991, to the Alabama Bureau of Investigation ("ABI").

(8) Sergeant Johnson, another defendant in the case, drove a vehicle "that had not been properly condemned" on personal business. Appellant reported the incident. The ABI determined that Johnson's use of the vehicle was improper.

(9) At some point prior to his discharge, appellant commenced an "investigation of certain improprieties within the Daphne Police Department." Chief Hall told him "to be quiet about the entire matter."

(10) Appellant disregarded the chief's admonition and continued his investigation. He reported his findings to "other appropriate authorities," including the ABI. When Chief Hall learned of these reports, he told the city manager that appellant

had to be fired. Chief Hall then "devised and initiated a systematic strategy to eliminate [appellant] from the Daphne Police Department." The chief's strategy succeeded on July 15, 1992, when the City discharged appellant.

(11) On November 12, 1991, Sergeants Gipson and Johnson "attempted to interrogate [appellant] regarding his investigation of the improprieties that [appellant] had witnessed within the Daphne Police Department. [Appellant] responded by informing [them] that he would not elaborate unless his attorney was present along with [Chief] Hall. [Sergeants Gipson and Johnson] responded by citing [appellant] for insubordination."

(12) The City terminated appellant's employment without cause.[5] The grounds the City cited as good cause for the termination were pretextual. The City discharged appellant because he was reporting episodes of misconduct in the Police Department to the ABI and "other appropriate authorities."

Drawing on these facts, appellant sought in his complaint to hold the defendants liable on four counts. The first two counts contained state law claims: that the City lacked good cause for discharging appellant, and that the City breached its duty to treat appellant "in a manner so as not to cause him unnecessary mental and emotional distress," by intentionally engaging, through its agents and employees, "in a clearly outrageous course of conduct causing severe emotional distress and physical harm to [appellant]." The third and fourth counts alleged violations of

---

[5]The allegation that appellant's discharge was unlawful because it was without cause does not appear in the Statement of Facts, but rather in count one of the complaint.

various federal constitutional and statutory provisions.  Counts three and four each alleged damages in excess of three million dollars.

Count three states that during appellant's employment in the police department, and in discharging him on July 15, 1992, the defendants

> either acted in a concerted, malicious intentional pattern to deprive [appellant] of his constitutional rights, or knowing that such [deprivation] was taking place, knowingly omitted to act to protect [appellant] from continuing deprivations of his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of grievances, and to be free from deprivations of life, liberty and property without due process of law;  all in violation of the Constitution and laws of the United States....

> [Moreover, the defendants,] in acting to deprive [appellant] of his rights, went far beyond actions reasonably necessary for the discharge of their duties and within the scope of their employment, and instead misused their official powers and acted from a willful and malicious intent to deprive [appellant] of his civil rights and cause him grievous injuries thereby.

> [Finally, the defendants] acted in an outrageous and [systematic] pattern of harassment, oppression, intimidation, bad faith, employment discrimination, cover-up and retaliation directed at [appellant]....

Count four of the complaint states that the defendants,

> acting individually and in their official capacities as supervisory and administrative officers of the City ... conspired, planned, agreed and intended to harass, intimidate and cause economic injury to [appellant].  [Their] purpose in so acting was to prevent [appellant], through economic and psychological violence and intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of Alabama, including but not limited to his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of grievances, and to be free from deprivations of life, liberty and property without due process of law;  all in violation of the Constitution of the United States.

> Pursuant to their conspiracy, [defendants] acted to

deprive [appellant] of his civil rights, by repeated and insidious act[s] of harassment, retaliation, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1985(3).

One has to guess at the number of claims for relief appellant attempted to state in counts three and four. By combining several claims for relief in each count, appellant disregarded the rules governing the presentation of claims to a district court. Federal Rule of Civil Procedure 8(a)(2) requires a pleader, in setting forth a claim for relief, to present "a short plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 10(b) provides that "[a]ll averments of claim ... shall be made in separate paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances...." Moreover, "[e]ach claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth." These rules work together

> to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*T.D.S. v. Shelby Mut. Ins. Co.,* 760 F.2d 1520, 1543 n. 14 (11th Cir.1985) (Tjoflat, J., dissenting).

The Rules of Civil Procedure also provide a cure for the problem presented by counts three and four. Specifically, if a complaint "is so vague or ambiguous that a [defendant] cannot reasonably be required to frame a responsive pleading," the

defendant may move for a more definite statement before filing a response.  "If the motion is granted and the order of the court is not obeyed within ten days after notice of the order or within such other time as the court may fix, the court may strike the [complaint] or make such order as it deems just."  Fed.R.Civ.P. 12(e).

Although it is likely that a more definite statement would have tightened appellant's complaint and perhaps eliminated many of the claims, the defendants elected not to seek one.[6]  Instead, pursuant to Federal Rule of Civil Procedure 12(b)(6), they moved the court to dismiss the case for failure to state a claim for relief.  They also moved the court to strike portions of the complaint as redundant.

Concluding that appellant's complaint failed to allege a cognizable federal claim, the court dismissed counts three and four.  The court held, however, that even assuming the presence of a cognizable federal claim, the defendants, who were sued in their individual as opposed to their official capacities, were entitled to qualified immunity.  *See generally Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146 (11th Cir.1994).  Finding that the Rule 12(b)(6) ruling stripped the court of federal question

---

[6]The district court had the inherent authority to require the appellant to file a more definite statement.  Such authority, if not inherent in Rule 12(e), is surely within the district court's authority to narrow the issues in the case in order to speed its orderly, efficient, and economic disposition.  In this case, the district court would have acted well within its discretion if, acting *sua sponte,* it had returned the complaint to appellant's attorney (retaining a copy for the court file) with the instruction that he plead the case in accordance with Rules 8(a)(2) and 10(b).

jurisdiction, the court dismissed the pendent state law claims without prejudice. This appeal followed the entry of final judgment for the defendants.

## II.

Appellant's sole challenge to the district court's judgment is that the court erred in dismissing his claim under the First Amendment, which is made applicable to state and local governments by the Fourteenth Amendment.[7] Given that error, appellant contends, it follows that the court should not have dismissed the pendent state law claims in counts one and two.

Appellant asks us to read his complaint as alleging that the City, pursuant to a conspiracy with the individual defendants in

---

[7]In its order dismissing the complaint, the district court stated that it had "consider[ed] ... the motion, plaintiff's response in opposition thereto, defendants' reply brief and pertinent portions of the record...." Under the Federal rules of Civil Procedure,

> [i]f, on a motion ... to dismiss for failure ... to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b).

To the extent that the district court's opinion can be read as showing that the court relied upon matters outside of the complaint, we should construe the order as granting summary judgment rather than dismissal under Rule 12(b)(6). However, in order to convert a motion to dismiss pursuant to Rule 12(b)(6) into a summary judgment motion, the district court is required to provide sufficient notice to the parties of its intent to do so. Here, the court failed to provide such notice. Therefore, we will treat the district court's order as one granting a Rule 12(b)(6) dismissal rather than an order granting summary judgment.

the case, discharged appellant for exercising speech on a matter of public concern—specifically, Officer McNichol's disregard of Sergeant Gipson's order to discontinue the high-speed chase, which resulted in four deaths. Appellant's complaint strongly implies, if it does not explicitly allege, that when Chief Hall learned that appellant was investigating "improprieties ... [appellant] had witnessed within the ... Department" and that he was reporting his findings to "appropriate authorities, including the ABI," he told appellant to be quiet and, when appellant persisted, he told the City's personnel manager that appellant had to go.

It is well established that a state may not discharge a public employee in retaliation for public speech. *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). This circuit employs a four-part test to determine whether a state (or, as in this case, a city) has done so.

First, a court must determine whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983); *Rankin,* 483 U.S. at 384, 107 S.Ct. at 2896; *Morgan v. Ford,* 6 F.3d 750, 754 (11th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994) (citing *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989)). Speech addresses a matter of public concern when the speech can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690. In the present case, appellant has alleged that he was fired because he reported police misconduct

(i.e., failure to terminate a dangerous, high-speed chase, and improper use of a confiscated vehicle).[8] Certainly, the question of whether police officers are properly performing their duties, as a public safety issue, must be considered an issue of political or social concern. Moreover, in alleging police misconduct, Fikes sought to "bring to light actual or potential wrongdoing or breach of public trust on the part of" government officials. *Connick,* 461 U.S. at 148, 103 S.Ct. at 1691. "[A] core concern of the [F]irst [A]mendment is the protection of the "whistle-blower' attempting to expose government corruption." *Bryson,* 888 F.2d at 1566. Therefore, Fikes has alleged sufficient facts to establish that he engaged in speech on a matter of public concern.

Second, a court must weigh the employee's "first amendment interests" against the interest of the City, as an employer, "in promoting the efficiency of the public services it performs through its employees." *Morgan,* 6 F.3d at 754. In performing this balancing test, a court must consider several factors: (1) whether the speech at issue impeded the government's ability to perform its duties effectively; (2) the manner, time and place of the speech; and (3) the context within which the speech was made. *Connick,* 461 U.S. at 151-55, 103 S.Ct. at 1692-94; *Morales v. Stierheim,* 848 F.2d 1145, 1149 (11th Cir.1988), *cert. denied,* 489 U.S. 1013, 109 S.Ct. 1124, 103 L.Ed.2d 187 (1989). We can discern no indication that Fikes' actions disrupted the functioning of the Daphne police department. To the contrary, Files's attempts to expose police

---

[8]The relevant portions of Fikes' complaint follow in an Appendix to this opinion.

malfeasance helped further the municipality's responsibility to provide effective law enforcement services.  In addition, Fikes chose to express his accusations at a "time, place, and manner" so as to minimize possible disruptions to the police department.

Third, a court must determine whether the speech in question played a "substantial part" in the government's decision to discharge the employee.  *Id.*  Without a doubt, appellant's complaint raises this inference.  Chief Hall's comment to the City's personnel manager indicates that the chief wanted appellant out of the police department.  In addition, after appellant refused to reveal the results of his investigation to Sergeants Gipson and Johnson, they cited him for insubordination.  Finally, a comparison of what the City *initially* cited as "good cause" (when it notified appellant of his discharge and his right to a pretermination hearing), with the "good cause" the City found *after* the hearing indicates that appellant was discharged for conduct other than that cited in the prehearing notice.[9]  The contrast between the notice

_____

[9]The initial notice to appellant recited:

> (a) Violation of [police] department rules of conduct by making false accusations against other officers in the department;
>
> (b) Insubordination;
>
> (c) Making untrue public statements;
>
> (d) Filing untrue and inaccurate departmental reports; and,
>
> (e) Making false accusations and [misrepresenting] facts in a report of an official investigation.

This statement of good cause is taken *verbatim* from appellant's complaint.  As noted *supra,* the cause recited in the eventual discharge order read quite differently.  It

and the discharge order suggests that the City arrived at good cause after the fact and without notice to appellant. From this it might be inferred, depending on the other evidence in the case, that the City had committed itself to terminating appellant's employment whether or not good cause existed. In any event, it seems clear to us that appellant has created an issue for the factfinder as to whether his speech played a "substantial part" in the City's decision to fire him.

Fourth, if the employee shows that the speech was a substantial motivating factor in the decision to discharge him, the City must prove by a preponderance of the evidence that it would have reached the same decision in the absence of the protected conduct. *Id.* Whether the City can satisfy this burden is obviously a matter for another day.

### III.

We VACATE the district court's judgment in favor of the City and the individual defendants in their individual capacities, insofar as it dismisses the First Amendment claim described above. We REMAND that claim for further proceedings. Due to the manner in which appellant has pled his complaint, however, the contours of that claim may differ when the district court, in narrowing the

---

recited:

> (a) Deliberately stealing, destroying, abusing or damaging City property, tools, or equipment, or the property of another employee, citizen or visitor;

> (b) Disclosure of confidential city information to unauthorized persons;

> (c) Wilfully disregarding City policies or procedures.

issues, calls appellant's counsel to task and determines precisely what it is that appellant contends. Our holding, therefore, is limited to the reading we have given the complaint in this opinion.

We also VACATE the court's dismissal of appellant's pendent claims and REMAND those claims for further proceedings.

SO ORDERED.

APPENDIX

27. On May 26, 1990, while FIKES was off duty, but was riding in a patrol car with Sergeant Walter Gipson, a high speed pursuit originated in the police jurisdiction of the City of Daphne. Due to the fact that said pursuit was becoming a danger to non-participants of the pursuit, it was ordered by Sergeant Walter Gipson to break-off the pursuit. This call to break-off was witnessed by FIKES. This order to break-off was ignored by Officer Charlie McNichol, with said high speed pursuit resulting in four fatalities. The four fatalities were subsequent to the order to Officer Charlie McNichol to break-off the pursuit.

28. FIKES reported the conduct of Officer Charlie McNichol regarding the high speed chase to Chief Joe Hall and again in an Alabama Bureau of Investigation (hereafter referred to as "ABI") report dated November 22, 1991. As a direct result FIKES was accused by Chief Joseph Hall (hereafter referred to as "HALL") of falsifying an official report to the City of Daphne, and of later stealing said report.

29. Melvin Johnson took a vehicle that had not been properly condemned and used the vehicle for personal use. Melvin Johnson was the acting Assistant Chief during this time period. The ABI

determined in their investigation that Melvin Johnson should not have been using said vehicle for his personal use. HALL recommended that FIKES be terminated for reporting the improper use of the vehicle, although it was not out-right stated by HALL that the recommendation for termination was for reporting the vehicle matter.

30. Charlie McNichol filed a report containing false allegations with HALL regarding FIKES' investigation of certain improprieties within the Daphne Police Department. HALL responded to said report by informing FIKES to be quiet about the entire matter.

31. After HALL became aware of the fact that FIKES was conducting an investigation and was reporting his findings to other appropriate authorities, to include the ABI, HALL went to the City Manager and asked the City Manager to "shit-can" FIKES. HALL, while acting under color of state law devised and initiated a systematic strategy to eliminate FIKES from the Daphne Police Department. HALL later stated to others "that he had only fired one man in the past two-years, and he had fired him, (FIKES), because he called and had him (HALL) investigated".

32. On November 12, 1991, Sergeant Walter Gipson and Sergeant Melvin Johnson attempted to interrogate FIKES regarding his investigation of the improprieties that FIKES had witnessed within the Daphne Police Department. FIKES responded by informing said individuals that he would not elaborate unless his attorney was present along with HALL. Sergeant Walter Gipson and Sergeant Melvin Johnson responded by citing FIKES for insubordination.