**Robbie AUTERY, et al., Plaintiffs,**

v.

**Kevin DAVIS, Defendant.**

**Case No. 2:08–cv–41–MEF.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 13, 2008.

Gregory Farzan Yaghmai, William Eugene Rutledge, Sr., Rutledge & Yaghmai, Birmingham, AL, for Plaintiffs.

Allison Alford Ingram, Charles Winston Sheehan, Jr., John W. Marsh, Ball Ball Matthews & Novak PA, Montgomery, AL, for Defendant.

### MEMORANDUM OPINION AND ORDER

MARK E. FULLER, Chief Judge.

Plaintiffs seek monetary damages as well as injunctive relief arising out of the termination of their employment as deputies in the Sheriff's Office for Chilton County. Plaintiffs are suing their former employer, Sheriff Ken Davis, pursuant to 42 U.S.C. § 1983 alleging that his termination of their employment violated their due process and freedom of speech rights. Currently before this Court is Defendant Kevin Davis's Motion for Summary Judgment (Doc. # 18), filed May 30, 2008. After reviewing the submissions of the parties in connection with the motions, this Court finds that Defendant's motion for summary judgment is due to be granted.

## I. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant

to 28 U.S.C. § 1331 (federal question). The parties contest neither personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir.2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir.2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

## III. FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motions. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Plaintiff Shane Fulmer was hired to work as a Chilton County Deputy Sheriff on January 19, 1999 by former Chilton County Sheriff Billy Wayne Fulmer. Shane Fulmer is the son of Billy Wayne Fulmer. Plaintiff Robbie Autery ("Autery") was hired by former Sheriff Fulmer as a part-time Chilton County Deputy Sheriff on October 3, 2005, and he became a full-time Deputy on June 19, 2006. In addition, Billy Wayne Fulmer was at one point married to Autery's aunt.

Defendant Kevin Davis ("Sheriff Davis") was elected Sheriff of Chilton County in November 2006, defeating Billy Wayne Fulmer. Plaintiffs actively campaigned for Billy Wayne Fulmer and against Sheriff Davis.

Shane Mayfield ("Mayfield") had served as Chief Deputy for the former Sheriff Billy Wayne Fulmer. Sheriff Davis kept Mayfield as Chief Deputy after he was elected. Sheriff Davis had Mayfield assess, review, and evaluate the employees in that office. Mayfield advised Sheriff Davis of the strengths and weaknesses of each employee based on his personal knowledge and experience of working with them. When Billy Wayne Fulmer was the sheriff, Mayfield felt he had very little control over Shane Fulmer due to the fact that the sheriff was his father. Mayfield warned Sheriff Davis that he might expect problems managing the former sheriff's relatives.

Shane Fulmer and Autery repeatedly complained to other employees, including Mayfield, about Sheriff Davis's policies and decisions with regard to their employment. Mayfield reported this conduct to Sheriff Davis. On several occasions, Sheriff Davis told Shane Fulmer and Autery that he would not tolerate such insubordination. Prior to their termination, Shane Fulmer and Autery learned that Sheriff Davis had been entering into business transactions on behalf of the Sheriff's Office with businesses owned by his wife. Autery made a complaint to the Attorney General's Office for the State of Alabama regarding these transactions. Sheriff Davis terminated the employment of Shane Fulmer and Autery on September 10, 2007. During the meeting at which their employment was terminated, Sheriff Davis asked them questions about their communications with the Attorney General's Office, which they refused to answer.

Neither Shane Fulmer nor Autery were given post-termination hearings. State of Alabama House Bill 69 ("HB 69"), Act No. 2002–90, created a civil service merit system for employees of the office of the sheriff, which included deputies. This Act created a three-person board to approve dismissals, suspensions, lay-offs, and terminations of these employees. The board was to be comprised of one member appointed by the Chilton County Commission, one member appointed by the Chilton County Sheriff, and one member appointed jointly by the Chilton County Commission and Chilton County Sheriff. Sheriff Davis did not submit the terminations of Shane Fulmer and Autery to the merit board because no members of the board had been appointed.

## IV. DISCUSSION

### A. Due Process

█ Plaintiffs first § 1983 claim is that Sheriff Davis's failure to work with the Chilton County Commission to appoint the merit board, and subsequent denial of a post-termination hearing, constituted a denial of Plaintiffs constitutional right to due process. The law is clearly established that government employees have no substantive due process rights regarding their employment. *See, e.g., Bussinger v. City of New Smyrna Beach,* 50 F.3d 922, 925 (11th Cir.1995) ("[A]n employee with a protected interest in his job may not main-

tain a substantive due process claim arising out of his termination."). Therefore, this Court is left to determine only whether their termination violated Plaintiffs' procedural due process rights.

Plaintiffs allege that Sheriff Davis deprived them of due process by failing to adhere to established state procedures, namely appointing a merit board and submitting their terminations for the board's approval. However, a state official's conduct, in violation of established state procedure, does not violate the Fourteenth Amendment's procedural due process requirement unless the state fails to make a meaningful postdeprivation remedy available. *See Parratt v. Taylor*, 451 U.S. 527, 543–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (holding that unauthorized negligent actions of state officials depriving prisoner of property did not violate procedural due process because state made available to prisoners a postdeprivation grievance procedure to recover on tort claims against the state); *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (extending *Parratt* to hold that unauthorized, intentional deprivations of property by state officials does not violate procedural due process so long as state provides adequate postdeprivation remedies).

In *Lumpkin v. City of Lafayette*, 24 F.Supp.2d 1259 (M.D.Ala.1998) (Albritton, J.), the plaintiff was employed by the city of Lafayette, Alabama as Public Safety Director. A city ordinance provided that the Public Safety Director was a merit system employee entitled to certain pre- and post-termination procedures. *See id.* at 1261. When the plaintiff was terminated without a hearing, he sued the city, mayor, and city counsel members under § 1983 for deprivation of due process. Judge Albritton noted that the plaintiff

was alleging that the deprivation was caused by *unauthorized* actions of state officials, because the alleged deprivation was the result of the city's failure to follow its established merit system procedure for notice and a hearing. *See id.* at 1265. Accordingly, Judge Albritton held that the rule established by *Parratt* and *Hudson* applied, and the plaintiff could only succeed if he could show the absence of any meaningful post-deprivation remedy. Judge Albritton then looked to the law of Alabama and found that "Alabama courts review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process." *Id.* (citing *Bell v. City of Demopolis*, 86 F.3d 191, 192 (11th Cir.1996); *Ex Parte Tuskegee*, 447 So.2d 713 (Ala.1984); *Guinn v. Eufaula*, 437 So.2d 516 (Ala.1983)) (internal quotation marks omitted). Judge Albritton therefore held that Alabama's judicial system provided a meaningful postdeprivation remedy, and that plaintiff could not establish a constitutional violation. *See id.* at 1266.

Like the plaintiff in *Lumpkin*, Plaintiffs Shane Fulmer and Autery have alleged inadequate procedural due process as a result of unauthorized conduct on the part of state officials. Specifically, Plaintiffs allege that Sheriff Davis's failure to follow the requirements of HB 69 deprived them of due process. However, the law of this circuit is that Alabama courts provide a meaningful postdeprivation remedy, which is all that due process requires. *See Bell*, 86 F.3d at 192; *Lumpkin*, 24 F.Supp.2d at 1266. Consequently, Plaintiffs have failed to establish a constitutional violation, and summary judgment in favor of Defendant is due to be granted on the due process claims.[1]

1. Because this Court is granting Defendant's motion with respect to Plaintiffs' due process

## B. First Amendment

Plaintiffs also allege pursuant to § 1983 that their termination violated their freedom of speech rights. Although not clearly articulated in their brief, Plaintiffs appear to be arguing two alternative ways in which their freedom of speech was violated. The first alternative is that they were terminated based on "raw political patronage" for supporting Billy Wayne Fulmer's campaign for sheriff. *See, e.g., Terry v. Cook*, 866 F.2d 373, 375 (11th Cir.1989). The second alternative is that they were terminated for expression on matters of public concern. *See, e.g., Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

█ With respect to Plaintiffs' raw political patronage claim, the Eleventh Circuit discussed a sheriff's right to terminate his deputies for political reasons in *Terry v. Cook*. In that case, the Circuit noted that

> Under Alabama law, a deputy sheriff is the general agent of and empowered to enter into business transactions for the sheriff. Any transaction within the scope of the sheriff's duties may be acted upon by his deputy. The deputy sheriff is the alter ego of the sheriff, and the sheriff is civilly liable for actions committed by a deputy done in the performance of his duty.

*Terry*, 866 F.2d at 377 (internal citations omitted). Moreover, "[a]t least one court has recognized that it was never contemplated that the sheriffs of the state must perform the powers and duties vested in them through deputies or assistants selected by someone else." *Id.* For these reasons, the Circuit held that "[w]e can find no less restrictive means for meeting the needs of public service in the case of the

sheriff's deputy than to acknowledge a sheriff's absolute authority of appointment and to decline to reinstate those who did not support him." *Id.* Consequently, even if Sheriff Davis did terminate Plaintiffs' employment based on their support for Billy Wayne Fulmer's campaign, he had "absolute authority" under the rule announced in *Terry* to do so. Accordingly, Plaintiffs' raw political patronage claim is without merit.

█ Lastly, in order to state a valid employee expression claim, an employee must satisfy a four-part test. Where a public employee alleges wrongful termination because of the exercise of free speech, the employee must show by a preponderance of the evidence that: (1) the employee's speech is on a matter of public concern; (2) the employee's first amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech in order to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's decision to demote or discharge the employee. If the employee succeeds in showing the preceding factors, the employer must prove by a preponderance of the evidence that (4) it would have reached the same decision even in the absence of the protected conduct. *See Stanley v. City of Dalton*, 219 F.3d 1280, 1288 (11th Cir.2000).

Plaintiffs do not clearly state exactly which speech forms the basis of their first amendment claim. However, it appears that Plaintiffs are arguing they were terminated for reporting alleged misconduct on the part of Sheriff Davis to the Alabama Attorney General's Office. Autery testified that, after Davis became Sheriff,

claims, this Court need not address Defendant's arguments related to the validity of HB

69.

Davis made certain business transactions on behalf of the Sheriff's Office with businesses owned by his wife. Autery felt this was improper and communicated this to the Attorney General. Autery further testified that, when he was terminated, Sheriff Davis indicated that he was aware that Autery had made this report to the Attorney General. According to Autery, Sheriff Davis told Autery that he had sought prior approval to conduct transactions with his wife's businesses. Autery also testified that Sheriff Davis asked who Autery spoke with at the Attorney General's office, and how he learned about the transactions. When Autery refused to answer these questions, Sheriff Davis fired him. Shane Fulmer also testified that Sheriff Davis terminated him after he refused to answer questions related to conversations he had with various individuals regarding these alleged ethics violations.

■ Reporting police misconduct is speech on a matter of public concern as a matter of law. *See Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir.1996) ("A core concern of the First Amendment is the protection of the 'whistle-blower' attempting to expose government corruption."); *Stanley*, 219 F.3d at 1289 (police officer accusing fellow officer of stealing money from evidence room constituted speech on a matter of public concern). Therefore, the analysis turns to the *Pickering* balancing test which weights the rights of the employee against the rights of the employer.

■ When weighing the employee's first amendment interests against the interest of the state, as an employer, in promoting the efficiency of its public services, this Court is to consider the following factors: (1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time, and place of the speech, and (3) the context within which the speech was made. *See Stanley*, 219 F.3d at 1289.

In *Stanley*, the Eleventh Circuit held that this balance weighed in favor of an officer's first amendment interests where the officer expressed a theory that a superior officer had stolen money from the evidence room, during an interview by an agency investigating the theft. *See Stanley*, 219 F.3d at 1289–91. During its analysis, the Circuit noted several key factors that weighed in favor of the officer's first amendment rights: (1) there was no evidence the officer's comments actually disrupted the police department; and (2) the accusations were not voiced to any coworkers outside the interview, or to the public. *See id.* at 1290–91. However, the Circuit noted that, weighing against the officer's first amendment interests, was the fact that the officer was expressing a theory with little to no evidence to support his claim, because such accusations "could be considered disruptive and potentially undermining to the mutual respect and confidence needed for fellow officers in a police department." *See id.* at 1290.

In the case of *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir.1989), the Circuit found that the *Pickering* balance weighed against the police officer's right of expression. In that case, the officer filed a complaint with the city manager that the Police Chief had stolen whiskey from the police department's evidence room. The city investigated and found the allegations to be unfounded, and the officer was demoted. The Circuit found that the officer's conduct "substantially interfered with police department operations" because he made "bitter complaints to all who would listen in the police department" and was conducting an "active investigation" into the Police Chief, all of which severely undermined the morale of the police department. In addition, the officer's interest in

speech was minimized because the context of the speech was such that the officer was dissatisfied with the fact that he had been passed over for a favorable job assignment. *Bryson,* 888 F.2d at 1567.

■ This Court finds that the *Pickering* balance weighs in favor of Sheriff Davis, because the facts of this case more analogous to *Bryson* than to *Stanley.* The context of Plaintiffs' complaints to the Attorney General, like *Bryson,* was that Plaintiffs' were extremely dissatisfied with Sheriff Davis's personnel decisions affecting them. Furthermore, Plaintiffs discussed the allegations with other officers. Moreover, Plaintiffs "repeatedly" and "constantly" complained to other officers about their disagreements with Sheriff Davis, which, according to several of the officers in the office, undermined the morale of the Sheriff's Office and was a "constant disruption." *See Bryson,* 888 F.2d at 1567. Accordingly, Plaintiffs have failed to meet their burden to show that their termination violated their constitutional right to freedom of speech, and Defendant is entitled to summary judgment on this claim as well.

■ In addition, even if Plaintiffs were able to show a constitutional violation on their employee expression claim, Defendants would still be entitled to summary judgment on the basis of qualified immunity. In constitutional tort cases where evidence of wrongful intent is an element of liability, a state official is entitled to qualified immunity if the record indisputably establishes that the official was in fact motivated, *at least in part,* by lawful considerations. *See Stanley,* 219 F.3d at 1296; *Foy v. Holston,* 94 F.3d 1528, 1535 (11th Cir.1996) ("Unless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendant's conduct—despite his having adequate lawful reasons to support the act—was the result of his unlawful motive.");

*Johnson v. City of Fort Lauderdale,* 126 F.3d 1372, 1379 (11th Cir.1997) ("The holding in *Foy* rested primarily on the existence of an indisputable and adequate lawful motive on the part of the social service employees such that reasonable officials would disagree as to the legality of their conduct.").

■ The record in this case is indisputable that (1) Sheriff Davis had adequate and lawful reasons to support terminating Plaintiffs' employment, and (2) that Sheriff Davis was motivated, at least in part, by these lawful considerations. *Stanley,* 219 F.3d at 1296. The testimony of several officers working in the Sheriff's Office establishes that Plaintiffs' constant and repeated complaints were undermining morale in the Sheriff's Office. Moreover, several officers noted that Plaintiffs' were not performing their job duties adequately. Consequently, Sheriff Davis had lawful reasons to terminate Plaintiffs' employment.

In addition, the record establishes that Sheriff Davis was motivated by these lawful considerations. In two separate meetings with Autery prior to his termination, Sheriff Davis said that he was aware of Autery's complaining, and that "he wasn't going to tolerate it no more," and if it continued he would "make an example out of somebody." Also, when Sheriff Davis fired Autery, he cited Autery's complaining as a basis for the termination. Moreover, in a meeting with Shane Fulmer prior to his termination, Sheriff Davis told Fulmer that he was reassigning him because Fulmer was constantly complaining about him and bringing down the morale of the Sheriff's Office. Under these circumstances, Sheriff Davis's decision to terminate Autery and Shane Fulmer was "objectively reasonable" for the purpose of qualified immunity. *Stanley,* 219 F.3d at 1297. Accordingly, the Court finds that, in

the alternative, Defendant is entitled to summary judgment on Plaintiffs' first amendment claim due to qualified immunity.

## V. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

(1) Defendant's Motion for Summary Judgment (Doc. # 18) is GRANTED.

(2) All claims and this case are DISMISSED WITH PREJUDICE.

(3) The pretrial and the trial scheduled in this matter are CANCELLED.

(4) This Court will enter a separate final judgment taxing costs.