[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12468
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 18, 2010
JOHN LEY
CLERK

D.C. Docket No. 07-21043-CV-WMH

BMI SALVAGE CORPORATION,
a Florida Corporation,

Plaintiff-Appellant,

versus

GEORGE MANION,
CHRIS MCARTHUR,
JOHN O'NEAL,
GREGORY OWENS,
MIGUEL SOUTHWELL,
MIAMI-DADE COUNTY, FLORIDA

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 18, 2010)

Before CARNES, MARCUS and COX, Circuit Judges.

PER CURIAM:

BMI Salvage Corporation appeals the dismissal of its 42 U.S.C. § 1983 First Amendment retaliation claims against Miami-Dade County, Florida and individual employees of the Miami-Dade County Aviation Department ("Department") for failure to state a claim upon which relief can be granted. After thorough review, we affirm.

## I. Background

We base our review of the facts of this case on BMI's First Amended Complaint. (R.2-31.) BMI salvages and demolishes out-of-service aircraft, and it leased aircraft parking space from the Department at the Opa Locka Airport. BMI voiced numerous objections to the management of the airport and complained of various acts of Department employees.[1] It sent a series of letters to Department director Angela Gittens and others protesting that non-tenants salvaged aircraft at the airport in competition with BMI. The letters asserted that the non-tenants did not clean up unsalvageable materials, pay rent, taxes, unemployment insurance, or workman's compensation insurance. (*Id.* at 12, 16, 17, 20; Exs. 1, 2, 5.) It sent a letter to the Department, to the president of the airport tenants association, and others

---

[1]In addition to listing BMI's objections to airport management, the First Amended Complaint also alleges that Blueside Services, Inc., an affiliate of BMI under common ownership, expressed concerns and filed a lawsuit against Miami-Dade County. (R.2-31 at 26, 40; Ex. 7.) Because Blueside Services is not a party to this case, we do not consider these allegations in analyzing whether BMI has stated a claim for relief.

2

regarding an improperly shored aircraft that fell on a ramp and spilled jet fuel. (*Id.* at 19; Ex. 3.) BMI also sent letters to Department employee George Manion and others objecting to lax after hours security at the airport. (*Id.* at 19; Ex. 4.) In addition, it sent e-mails to the Department objecting to a proposed rent increase (*id.* at 22); complaining of a lack of adequate signage directing visitors to tenants on its side of the airport (*id.* at Ex. 6); complaining of illegal fueling operations at the airport (*id.* at 27); and complaining that Department employee George Manion smoked cigarettes next to an aircraft parked on BMI's leasehold. (*Id.* at 29.) Further, BMI complained of Miami-Dade County policemen conducting motorcycle training classes on taxi lanes inside the airport, (*id.* at 30) and it filed an economic discrimination complaint against the Department with the Federal Aviation Authority. (*Id.* at 34.) Last, it wrote a letter to the Department's county manager complaining that Department employee Gregory Owens made a false statement regarding BMI's efforts to renegotiate its lease, delayed the issuance of a permit for installation of a fence on BMI's leasehold, and intercepted BMI's rent checks in an effort to cause BMI to default on its rent obligations. (*Id.* at 39.)

BMI alleges that the Department and its employees George Manion, Chris McArthur, John O'Neal, Gregory Owens, and Miguel Southwell retaliated against it for voicing these complaints. Alleged acts of retaliation include: sending BMI letters

3

stating it violated its lease by storing a work dive boat and a non-flyable aircraft on its leasehold (*id.* at 15, 30); supporting "fly-by-night" operators, who unfairly competed with BMI in the aircraft salvage business (*id.* at 16); obstructing BMI's efforts to obtain development privileges and attempting to exclude it from the airport (*id.* at 17-18, 28, 34); ignoring requests by BMI to downsize its leasehold (*id.* at 21); failing to add BMI's name to the sign at the front entrance to the airport (*id.* at 23); threatening a BMI customer with liability for any damage done by its aircraft in the event of a hurricane (*id.*); issuing a notice of violation for BMI's failure to obtain a building permit before constructing a modular office and trailer (*id.* at 26); withholding a letter of concurrence for a leasehold expansion and fence permit (*id.* at 27); lodging a complaint against BMI for abandoning a garbage container off its leasehold (*id.* at 32); attempting to restrict the number of aircraft BMI could receive and salvage (*id.* at 33); directing a competitor of BMI to park an aircraft to block BMI's access to its leasehold; (*id.* at 34) proposing unreasonable lease terms to BMI (*id.* at 37); and, ultimately refusing to negotiate a new lease with BMI. (*Id.* at 41.)

BMI brought this 42 U.S.C. § 1983 First Amendment retaliation claim based on these allegations against Miami-Dade County, Florida and the aforementioned Department employees. The defendants filed a motion to dismiss, which the court granted without prejudice, and it granted BMI leave to file an amended complaint.

BMI then filed a seven-count First Amended Complaint ("Complaint"). Counts I-V assert that each employee violated BMI's First Amendment free speech rights by retaliating against it for objecting to airport management and operations. (*See id.* at 42-52 (listing alleged acts of retaliation attributable to each defendant).) Counts VI and VII raise municipal liability claims, alleging that the employees' acts of retaliation are attributable to the County because it failed to adequately train and discipline the employees and because it adopted an unofficial practice of depriving outspoken tenants of opportunities to expand their businesses at the airport. The defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that (1) BMI failed to allege facts sufficient to create a claim of municipal liability against the County; and (2) the individual defendants are entitled to qualified immunity. (R.2-34.) The court granted the motion to dismiss without prejudice, and it granted BMI leave to amend its Complaint within twenty days. (R.2-40.) BMI elected not to amend, and the dismissal order became a final judgment. BMI appeals.

## II. Discussion

We accept as true the allegations contained in the Complaint and consider whether BMI has stated a claim upon which relief can be granted. The parties frame the issues on appeal as questions of qualified immunity and municipal liability.

5

Central to both of these issues, and central to any claim under 42 U.S.C. § 1983, is whether the Complaint alleges a constitutional violation. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994) ("The first step in any [section 1983] claim is to identify the specific constitutional right allegedly infringed.") Because we conclude BMI has failed to allege a violation of its First Amendment right to free speech, we affirm the dismissal of its Complaint.

The First Amendment protects independent contractors, like BMI, from adverse actions taken by the government in retaliation for the exercise of the freedom of speech. *Bd. of County Comm'rs, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 673, 116 S. Ct. 2342, 2344 (1996). But, the First Amendment does not guarantee contractors "absolute freedom of speech." *Id.* 518 U.S. at 675, 116 S. Ct. at 2347. Rather, the balancing test commonly applied in the employment context and first set forth in *Pickering v. Board of Education of Township High School District 205, Will County*, 391 U.S. 563, 88 S. Ct. 1731 (1968), determines the extent of their protection. *Umbehr*, 518 U.S. at 673, 116 S. Ct. at 2346. The initial inquiry under *Pickering* is whether the contractor "spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958 (2006) (citing *Pickering*, 391 U.S. at 568, 88 S. Ct. at 1731). If the answer is no, the contractor has no First Amendment cause of action based on the government's reaction to the

speech. *Id.* If the answer is yes, a First Amendment claim may arise; we then consider whether the government took an adverse action against the contractor because of the protected speech and whether the government "had an adequate justification for treating the [contractor] differently from any other member of the general public." *Id.*

In this case, we address only the first step of the *Pickering* analysis, whether BMI spoke as a citizen on a matter of public concern in objecting to the management and operations of the airport. Because we conclude BMI spoke as a lessee, and its objections amounted to an airing of personal grievances related to its leasehold rather than protected speech on matters of public concern, we hold BMI has not stated a First Amendment retaliation claim. We do not consider whether the defendants took an adverse action against BMI, whether they took this action to retaliate against BMI's speech, or whether they had an adequate justification for doing so.

We examine the "content, form, and context" of BMI's speech to analyze whether it is protected under the First Amendment. *Connick v. Myers*, 461 U.S. 138, 147-48, 103 S. Ct. 1684, 1690 (1983). A threshold question is whether BMI "spoke *as a citizen* on a matter of public concern." *D'Angelo v. Sch. Bd. of Pok County, Fla.*, 497 F.3d 1203, 1209 (11th Cir. 2007) (emphasis in original) (internal quotation and citation omitted). If so, any statement involving a matter of political, social, or other

concern to the community is protected. *Connick,* 461 U.S. at 146, 103 S. Ct. at 1689.

But, if BMI did not speak *as a citizen*,[2] or if its speech "touches on items of private concern, not on items of public relevance, it warrants no First Amendment protection." *Tindal v. Montgomery County Com'n*, 32 F.3d 1535, 1539 (11th Cir. 1994) (citation omitted).

The allegations in the Complaint reflect that BMI's speech concerned its leasehold and the profitability of its business. Its most oft-repeated complaints related to derelict conditions at the airport and the actions of non-tenant competitors, who salvaged aircraft on neighboring leaseholds and engaged in questionable business practices. BMI complained that these "bootleg operators" caused it to lose at least $460,000 in revenue. (R.2-31 at Ex. 2.) When taken in isolation, several of BMI's statements appear to touch on matters of concern to the community. For example, BMI complained that its competitors employed illegal aliens (*id.* at Ex. 1), complained of airport security and safety issues (*id.* at Exs. 3, 4), and complained that

---

[2]In *Garcetti*, an employment case, the Supreme Court explained that a court should make separate inquiries—whether the speech was made in the plaintiff's capacity as a citizen; and, whether the plaintiff spoke on a matter of public concern. 547 U.S. at 415, 126 S. Ct. at 1956. *Garcetti* held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id.* at 422, 126 S. Ct. at 1960. As a tenant, BMI had no "official duty" to speak, so the ultimate holding of *Garcetti* does not affect our analysis. Nevertheless, *Garcetti* teaches that we must consider whether BMI spoke *as a citizen*. So, if BMI spoke primarily in its role as lessee, addressing the terms of its lease and the conditions of its leasehold—and not as a citizen—its speech is not protected.

8

its competitors improperly disposed of hazardous materials. (*Id.* at Ex. 6.) But, "[t]he fact that such information may be of general interest to the public . . . does not alone make it of 'public concern' for First Amendment purposes." *Morris v. Crow*, 142 F.3d 1379, 1381 (11th Cir. 1998) (citations omitted). "Not only must the speech be related to matters of public interest, but the purpose of the expression must be to present such issues as matters of 'public' concern." *Id.* at 1382. The purpose of BMI's statements was not to "'bring to light actual or potential wrongdoing or breach of public trust on the part of' government officials," *Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996) (quoting *Connick*, 461 U.S. at 148, 103 S. Ct. at 1691), nor to report specific wrongs and abuses by the Department in an attempt to "improve the quality of government." *Morris*, 142 F.3d at 1382 (citation omitted). Rather, the purpose was to air its individual grievances with the Department, to ensure the profitability of its leasehold, and to promote the expansion of its business. In sum, BMI spoke not in its role as a citizen, but in its role as a lessee. *See D'Angelo*, 497 F.3d at 1210 (finding employee's speech unprotected because he did not speak as a citizen, but to fulfill professional duties).

Disputes commonly arise between landlords and tenants regarding commercial leases. In some cases, particularly where the government is the lessor, a tenant's concerns regarding the lease or conditions of the leasehold could be of general

interest to the community at large. This does not, however, transform the airing of personal grievances into statements made as a citizen on matters of public concern. Because BMI spoke as a lessee, not as a citizen, in objecting to the conditions at the airport, its speech was not protected by the First Amendment. Therefore, its Complaint fails to state a claim upon which relief can be granted as to the County or the Department employee defendants.

AFFIRMED.